_^FITZSIMMONS, J.
Plaintiffs are the widow of Len Cotton, Jerry Dean Dillon Cotton, and Mr. Cotton’s children: Lenzy Ray Cotton, James Edward Cotton, Katrina Cotton, and Gardner Cotton. Defendants are: Harry Crosby; his insurer, Safeway Insurance Company; and the Cotton’s UM carrier, Credit General Insurance Company (Credit General). The Cottons prayed for damages that resulted from the death of Mr. Len Cotton. Mr. Cotton was struck and killed by a car driven by Mr. Crosby.
Defendant, Credit General, appealed the trial court’s holding that UM coverage was equal to the policy liability limits of $500,000. Plaintiffs answered the appeal. We affirm.
UM COVERAGE
The trial court found that prior to submission of the UM form for signature, the insureds, Mr. and Mrs. Cotton, were misinformed about the limits of UM coverage available. The insurance company agent testified that his standard practice was to review the application, note the policy limits, and verbally offer prospective insureds seeking commercial line policies two options for UM coverage: $25,000 or $50,000. This was true even though the policy liability limits were $500,000 for bodily injury. He did not testify that he reviewed the UM waiver form with the insureds or specifically explain to them that UM in the amount of the policy limits could be selected. After the insurance agent’s conversation with Mrs. Cotton, the UM form was sent to the insureds with the limit of UM coverage of $50,000 pre-selected by the agent. The instructions with the form were to initial the pre-selected limit, and return. The trial court held that this selection of lower UM limits was invalid. Thus, the UM coverage available from Credit General equaled the policy limit of $500,000.
The issue is not the validity of the form, but whether the insured was placed in a position to make an informed, meaningful selection, or waiver, of UM coverage. The burden to show that a valid rejection “has been legally perfected” was on the insurer. Daigle v. Awthement, 96-1662, p.3 (La.4/8/97); 691 So.2d 1213, 1214.
After a thorough review of the record, we find no manifest error or error of law in the judgment of the trial court on the issue of UM coverage. The actions of the insurer’s agent resulted in misinformation to the insured that verbally modified the UM selection form. The information supplied by the agent could have reasonably led the insureds to believe that the highest available *1085 limit for the policy was $50,000. This misinformation foreclosed an informed, ^meaningful selection by the insured. See Tugwell v. State Farm Insurance Company, 609 So.2d 195, 197-98 (La.1992); Degruise v. Houma Courier Newspaper Corporation, 94-2386, p.11-14 (La.App. 1st Cir.6/23/95); 657 So.2d 580, 588-589, affirmed, as amended, on other grounds, 95-1863, 95-2675 (La.11/25/96); 683 So.2d 689; see also Daigle, 96-1662, p.5; 691 So.2d at 1215 (The supreme court recognized that misinformation could invalidate a signed rejection of UM coverage on an otherwise valid form). Insureds “cannot exercise an option” not made known to them. Tugwell, 609 So.2d at 199.
ANSWER TO APPEAL
The Cottons assert that the trial court erred in failing to award punitive damages against Mr. Crosby under Louisiana Civil Code 2315.4. They assert error in not awarding attorney’s fees pursuant to Louisiana Code of Civil Procedure 1472; and, in the trial court’s dismissal of the claim of James Edward Cotton. Additionally, the Cottons ask for sanctions for frivolous appeal. See La. C.C.P. art. 2164.
PUNITIVE DAMAGES
Mr. Crosby lived next door to Mr. Cotton. Mr. Crosby stated that he hit Mr. Cotton while Mr. Crosby was trying to turn into the Crosby driveway. Mr. Crosby did not remember having a lot of drinks, but he was intoxicated at the time of the accident. In a criminal proceeding, he pled guilty, was convicted of vehicular homicide, and received a sentence of six years at hard labor.
We cannot say that the facts support a finding of wanton and reckless disregard of the safety of others sufficient to overcome the discretion granted to the trial court. See La. C.C. art. 2315.4; Aycock v. Jenkins Tile Company, 96-2348, 96-2349, p.12 (La.App. 1st Cir.11/7/97); 703 So.2d 117, 124, writ denied, 97-3056 (La.2/13/98); 709 So.2d 753. We also note that the purpose of Civil Code article 2315.4 is to punish the drunken driver, not the family of the driver. Mr. Crosby was incarcerated at the time of trial. When he was employed, Mr. Crosby made approximately $200 a week. Mrs. Crosby testified that she made about $1300 a month, and was supporting herself. She and her husband had no savings.
ATTORNEY’S FEES
Attorney fees may be awarded for failure to admit “the truth of any matter as requested” that is thereafter proved, unless the failure was in good faith or had some reasonable basis. La. C.C.P. art. 1472. The fees awarded would be those incurred in proving the truth of the requested admission.
[iThe identity of the person who signed the policy and prepared the application for insurance were reasonably disputed facts at trial. The limits of liability were admitted by Credit General in other pleadings. A copy of the policy application, showing liability limits of $500,000, was attached to Credit General’s statement of undisputed fact. The record contains no evidence that additional fees were incurred. Under the facts in this particular case, we find no error in the trial court’s denial of fees.
CLAIM OF JAMES EDWARD COTTON
James Edward Cotton did not appear at trial, and submitted no evidence of his claim. We find no error in the dismissal.
FRIVOLOUS APPEAL
Credit General relied on the information on the face of its UM form, and disagreed with the trial court’s credibility determinations of disputed material facts surrounding the UM selection process. The request for sanctions is denied.
For these reasons, we affirm the judgment of the trial court. The costs of the appeal are assessed one-half to plaintiffs, Jerry, Lenzy, Katrina, and Gardner Cotton, and one-half to defendant, Credit General.
AFFIRMED.