803 So.2d 41 (2001)
Millicent Clesi Brodtmann, Wife of and Edwood S. BRODTMANN
v.
Claude W. DUKE and Kremer Marine, Inc.
No. 98-CA-1518.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2001.
Writ Denied December 5, 2001.
Opinion on Grant of Rehearing January 2, 2002.
*42 Gilbert V. Andry IV, Gilbert V. Andry, III, Andry & Andry, L.L.C., New Orleans, Counsel for Plaintiff/Appellant.
Lawrence J. Ernst, C. Edgar Cloutier, III, Mary Beth Meyer, Christovich & Kearney, L.L.P., New Orleans, Counsel for Defendant/Appellee.
Gilbert V. Andry, IV, The Andry Law Firm, L.L.C., and Gilbert V. Andry, III, Andry & Andry, L.L.C., New Orleans, LA, Counsel for Plaintiff/Appellant, on Rehearing.
C. Edgar Cloutier, III, Mary Beth Meyer, Lawrence J. Ernst, Christovich & Kearney, L.L.P., New Orleans, LA, Counsel for Defendant/Appellee, on Rehearing.
Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, Sr., and Judge MAX N. TOBIAS, Jr.
BAGNERIS, Judge.
This appeal arises from a suit filed by Millicent Brodtmann and the major children of Edwood Brodtmann for the wrongful death of Edwood Brodtmann. The trial court found in favor of the plaintiffs, finding that the defendant, Onan Corporation ("Onan"), was liable for the wrongful death of Edwood Brodtmann under General Maritime Law and the Louisiana Product Liability Act. The attorneys for the plaintiffs are now requesting attorney's fees from this Court, claiming that the trial court erroneously denied their request for their fees and costs incurred when they were forced to expend time and effort to get facts that the defendant denied during the discovery process. We disagree with the plaintiffs' attorneys, and we affirm the trial court's ruling.

FACTS

I. The Wrongful Death Case
In October of 1989, Edwood Brodtmann, Claude Duke, Louis Dehon and Claude Hogan arranged to take an overnight fishing trip aboard Mr. Duke's thirty-seven foot cabin cruiser, the M/V "PEGGY D". At the time of the purchase of the boat in 1968, installed and functioning on the boat was an Onan MCCK marine gasoline generator manufactured by Onan. This generator remained in place and functioning on the boat until the date of the accident.
On the morning of October 10, 1989, the four men left Bayou Caddy, Mississippi aboard the M/V "PEGGY D" and headed into Louisiana waters. At about 10:00 a.m., the men left the M/V "PEGGY D" and headed into smaller boats that they had towed from Mississippi. Before they left the M/V "PEGGY D", they left the Onan generator activated for the purpose of cooling the cabin. Sometime later that *43 day, the three men came back aboard the M/V "PEGGY D". Later that night, Mr. Brodtmann, Mr. Hogan and Mr. Dehon died on the M/V "PEGGY D" as a result of carbon monoxide poisoning.
On the afternoon of October 11, 1989, the Coast Guard arrived at the boat. They found the three dead men and Mr. Duke, who was alive but injured by the carbon monoxide. At about 3:00 p.m. on that same day, representatives from the St. Bernard Parish Sheriff's Office arrived on the scene. Their investigation revealed that the Onan generator was in the "ON" position, but it was not running. Additionally, none of the windows in the boat were open.
Mr. Gene Jackson, a marine surveyor, was hired by the St. Bernard Parish Sheriff's Office to conduct an inspection of the Onan generator. He had sold and repaired a number of these generators during his time as a marine mechanic and marine surveyor. Mr. Jackson discovered that the galvanized steel exhaust pipe nipple, which connected the generator to the exhaust elbow, had corroded from the inside out and ultimately failed. This caused a release of exhaust fumes (carbon monoxide) into the cabin of the boat, which resulted in the death of the three men.
The trial court found for the plaintiffs in this case, concluding that, due to its presale failure to warn and its post-sale failure to warn, Onan was liable for the wrongful death of Edwood Brodtmann under General Maritime Law and the Louisiana Products Liability Act. This Court affirmed that decision. Brodtmann v. Duke, 96-0257 (La.App. 4 Cir. 2/11/98), 708 So.2d 447.

II. The History of the Onan Generator
In 1966, the Onan Corporation chose galvanized steel for the manufacture of the exhaust pipe nipple that connected the Onan generator manifold and the exhaust elbow assembly. This constituted a design defect under the pertinent products liability law. At the time of the manufacture, the Onan Corporation knew that stainless steel was the material of choice for this part of the generator. It was proven at the trial level that this design defect, coupled with Onan's failure to warn the end users of this defect, caused at least nine deaths and nine cases of hypoxic injury. Although a recall was feasible, Onan failed to address this problem and failed to warn the end users of the peril.
The galvanized steel was a poor choice for this application. Despite the fact that Onan knew that the galvanized steel would corrode and seize up after a time, it used it because it would save costs. In the generator, the exhaust pipe nipple would be subjected to temperatures of between 800 and 1300 degrees Fahrenheit. The zinc coating on the exhaust pipe nipple would melt off at temperatures of approximately 787 degrees Fahrenheit. Once this zinc coating was burned off, there would be nothing to protect the galvanized steel from accumulating condensation. This would lead to accelerated corrosion in the interior of the pipe.
Over the years, there have been a series of Onan generator failures, which have resulted in at least nine deaths and nine serious injuries. Even though lawsuits concerning this specific defect had been repeatedly brought against Onan through the years, the company did nothing to change the design flaw in its product.

III. The Previous Lawsuits
In 1973, a lawsuit was filed against Onan (Kisselman v. Onan Corporation, et al), in which Onan was accused of negligently manufacturing and installing the galvanized steel exhaust pipe nipple on its *44 MCCK generator, resulting in two deaths and two serious injuries. Onan was placed on notice during the Kisselman litigation that there was the possibility that the exhaust pipe nipple would corrode from the inside out and fail, causing leakage of deadly carbon monoxide. During the course of this 1973 litigation, Onan admitted that the failed exhaust pipe caused the two deaths and the two injuries.
In 1973, there was a second incident involving the Onan generator. A girl was hospitalized due to carbon monoxide asphyxiation.
In 1976, another Onan galvanized steel exhaust pipe nipple corroded from the inside out and failed. Here again, two people were killed, and two people were severely injured due to carbon monoxide poisoning caused by the failure of the Onan exhaust pipe nipple. Ten days after this incident, Onan contacted its dealer in Alabama to examine the generator involved in that case. During his deposition in that case, the dealer testified that the exhaust pipe nipple had corroded from the inside out, resulting in the release of carbon monoxide into the vessel. In Buchanan v. Onan Corporation, et al, the suit filed following this 1976 incident, Onan admitted that the exhaust pipe assembly had failed, resulting in the release of carbon monoxide into the vessel.
In 1981, there was another incident involving the Onan exhaust pipe assembly. In that case, two people were seriously injured by the emission of carbon monoxide from the generator.
In 1984, another lawsuit was filed (Horovitz v. Onan Corporation, et al), in which Onan conducted an investigation and determined that the generator's galvanized steel exhaust nipple corroded and failed, resulting in one more death and another injury.
In 1985, there was another death and serious injury caused by the failure of the exhaust pipe nipple. In that case, Onan admitted that the exhaust pipe nipple had corroded from the inside out and caused the emission of carbon monoxide into the vessel.

IV. This Lawsuit
During the discovery process for the Brodtmann wrongful death case, the attorneys for the plaintiffs requested Onan's admission of certain facts surrounding the previous cases involving the MCCK generator galvanized steel exhaust pipe nipple, and Onan denied all of these requests. The attorneys for the plaintiffs claim that they spent needless time and money to get the facts that should have been disclosed to them directly by Onan. Additionally, the attorneys for the plaintiffs claim that since these admissions were of substantial importance and Onan's denial needlessly dragged out the discovery process, they should be compensated for their time and effort under Louisiana law. They assert that the trial court erred in denying their request for this compensation.

LAW AND DISCUSSION
The trial court has broad discretion in regulating pretrial discovery, and its discretion should be honored absent evidence of abuse. See Powell v. Dep't of Highways, 383 So.2d 425, 430 (La.App. 4th Cir.1980); Adams v. Deaton, Inc., 97-1237 (La.6/30/97), 696 So.2d 997. If the trial court within its discretion concluded that the plaintiffs' requests fit into one of the applicable exceptions to Louisiana Code of Civil Procedure Article 1472, then this Court should affirm the decision.
Louisiana Code of Civil Procedure Article 1472 provides as follows:
If a party fails to admit the genuineness of any document or the truth of any *45 matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.
A court shall order the award of reasonable attorney's fees if the party from which the information is sought fails to admit the genuineness of any document or the truth of any matter as required by Article 1466, and the genuineness of the document or the truth of the matter is proven at trial. The trial court shall make this order unless the request was objectionable, the admissions sought were of no substantial importance, the party failing to admit had reasonable grounds to believe that it might prevail in the matter, or there was a good reason for the failure to admit. The fees awarded would be the reasonable expense incurred in proving the truth of the requested admission. See Cotton v. Credit Gen. Ins. Co., 97-2674 (La. App. 1 Cir. 12/28/98), 723 So.2d 1083. The trial court has wide discretion in determining whether to award attorney's fees given the broad exceptions provided in Article 1472.
This Court has previously held that in the situation where a party fails to admit a fact during discovery that is later proven at trial and later fails either to show reason it could not have admitted that fact or that it had reasonable grounds to believe that it might prevail on the particular factual matter at trial, that party may be subject to an order for expenses and attorney fees. See New Orleans Public Service, Inc. v. Checker Cab Co., 332 So.2d 489 (La.App. 4th Cir.1976). (Emphasis Supplied). The imposition of these sanctions must be carefully weighed against the recognition of the ultimate purposes of the adversarial system in the law. The purpose of the discovery process is not to force the opposing party to admit to the contested facts that are at the heart of the ultimate dispute. Rather, the central purpose of the discovery rules is to require the admission of facts which ought not to be disputed at trial, so as to eliminate the time, trouble and expenses of proving facts that are undisputed. See Boseman v. Orleans Parish School Board, 98-1415 (La.App. 4 Cir. 1/6/99), 727 So.2d 1194, writ denied, 99-0390 (La.4/1/99), 742 So.2d 554. (Emphasis Supplied). When a party refuses to answer interrogatories during discovery, their refusal must fit within one of the exceptions to Article 1472. If the trial court, within its discretion, does not find that the reason for the refusal fits into one of the exceptions, then it shall impose the sanctions provided for within the article.
In Boseman, the only articulated reason given for the opposing party's failure to admit certain facts during the discovery process was that parties often fail to disclose pivotal facts during the discovery phase of a trial. This Court did not accept that as a reasonable basis for refusing to answer inquiries during discovery under Article 1472, and, as a result, it ordered the payment of reasonable attorney's fees and expenses. This Court based its reasoning on the idea that "the failure to properly admit a fact not in dispute causes serious injury to the opposing party, the most important of which is the fact that it causes excessive adversarial conduct on *46 the part of lawyers; this in turn leads to increased costs, delay, disrespect for law, unprofessional conduct, and disillusionment with the practice of law." See Id. at pp. 8-9, 727 So.2d at 1198.
The trial court has discretion about whether or not to impose the sanctions provided for in Article 1472, and this decision must be afforded deference by the appellate court. However, the decision of a trial court will not be given deference by this Court if the trial court's decision was based on an erroneous interpretation of the law rather than a valid exercise of discretion. See Huddleston v. Farmers-Merchants Bank & Trust Co., (La.App. 3 Cir. 11/2/00), 772 So.2d 356. In short, the trial court must comply with the law provided by the Code of Civil Procedure. If it does, then the appellate court must respect the decision of the trial court. If, however, it does not comply with the rule of law, the appellate court must disregard the trial court's decision and apply the proper rule of law.
In determining whether the party failing to admit a fact during discovery had reasonable grounds to believe that it might prevail, the proper test is whether the party acted reasonably in believing that it might prevail. See Harolds Stores, Inc. v. Dillard Dep't Stores, 82 F.3d 1533, 1555 (10th Cir.), cert. denied, 519 U.S. 928, 117 S.Ct. 297, 136 L.Ed.2d 216 (1996).
The defendant asserts that its failure to admit certain facts during the discovery process in this case was reasonable and should be considered as such under the exceptions to the sanctions under Article 1472. Central to the defendant's contention is that there was a lack of similarity between the Brodtmann incident and the previous cases involving the MCCK generator. The defendant argues that since these facts were hotly in dispute, it was reasonable under the circumstances for it to refuse to admit facts concerning the previous incidents during discovery. We agree.
In its Reasons for Judgment, the trial court explained that the imposition of sanctions depends upon the facts and circumstances of the case. The trial court concluded from the circumstances of the case that at no time was it under the impression that the defendants were "not conscientiously attempting to comply with discovery." In addition, the trial court concluded that the large amount of time that the plaintiffs spent in discovering the facts refuted by the defendant should have no bearing on its decision to impose sanctions on the defendant. Ultimately, the trial court found that there was no evidence presented to support the plaintiffs' assertions that there had been sanctionable conduct on the part of the defendant.
The trial court acted well within its discretion. While it may be true that the plaintiffs expended much time and effort gathering the information that the defendant refused to provide during discovery, this does not in and of itself constitute sanctionable conduct. The similarity between the events in the Brodtmann case and the prior cases was hotly in dispute. Article 1472 provides that the court shall award attorney's fees unless the party refusing to give the information reasonably believes that it will prevail on the merits or has another reasonable ground for refusal. Given the fact that during the trial the defense planned to argue about the dissimilarities between the previous incidents and the Brodtmann incident, the defense had reasonable grounds to believe that it would prevail on the matters in controversy.
The facts of this case contrast sharply to those in Boseman, supra. In Boseman, *47 the only articulated reason given for the refusal to answer certain discovery interrogatories was that parties often fail to admit pivotal facts during the discovery process. Under Article 1472, this would be sanctionable conduct, and this Court found that the award of attorney's fees would be reasonable in such a case. In Boseman, the defendant did not have a reasonable, articulable explanation for not responding to the interrogatories. Under these circumstances, the correct decision was to impose sanctions upon the defendant. However, when the party refusing to answer interrogatories has specific, reasonable reasons for not doing so, the trial court would be wholly within its discretion in refusing to impose sanctions. Given this discretion, it would be inappropriate for this Court to reverse the decision of the trial court. We therefore decline to do so.

CONCLUSION
While it is true that the plaintiffs were forced to expend much time and effort to discover facts that the defendant refused to divulge during discovery, this does not, in and of itself, constitute sanctionable conduct on the part of the defendant. Since the defendant had a reasonable ground not to admit the contested facts, and the trial court acted within the rule of law and within its discretion under Louisiana Code of Civil Procedure Article 1472, this Court affirms the judgment of the trial court in denying the plaintiffs' petition for attorney's fees.
AFFIRMED.
MURRAY, J., dissents with reasons.
MURRAY, J., dissenting with reasons.
Because I believe that the trial court applied the wrong standard in deciding plaintiffs' entitlement to costs and attorneys fees for defendants' failure to admit certain facts regarding prior incidents and litigation, I respectfully dissent from the decision to affirm the judgment at issue in this appeal.
The trial court's Reasons for Judgment suggest that "discovery sanctions" were found inappropriate because there was no evidence of intentional nondisclosure and no failure to abide by any of the court's discovery orders, as provided in Articles 1469, 1470 and 1471. However, as the Supreme Court has explained, requests for admissions serve a purpose distinct from that of the discovery procedures mentioned in the latter articles:
[T]his procedure is designed to expedite the trial of cases and reduce to a minimum the expense involved, ... for it is generally agreed that its employment presupposes the requesting party knows the facts sought to be admitted and merely desires to ascertain and circumscribe the contested factual issues that are to be ultimately litigated. In other words, the purpose "is to require admission of matters which ought to be admitted, or which will not be disputed at the trial, so that the time, trouble and expense required to prove them may be avoided." Metropolitan Life Ins. Co. v. Carr, D.C., 169 F.Supp. 377 [(Md.1959)]. As otherwise stated, its purpose is to eliminate the necessity of proving uncontroverted facts. It may not, therefore, be applied to a controverted legal issue lying at the heart of a case.
Voisin v. Luke, 249 La. 796, 805-06, 191 So.2d 503, 506 (1966) (footnote omitted; emphasis in original).[1] Because requests *48 for admissions are thus intended to confirm facts rather than to discover them, the standard for determining whether a party is entitled to an award of expenses under Civil Procedure article 1472 is not found in Articles 1469-71, but must be determined based upon the requirements set forth in Article 1467 for a party's responses to these requests:
If objection is made, the reasons therefor shall be stated. The answer [to a request for admission] shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder.... A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Article 1472, deny the matter or set forth reasons why he cannot admit or deny it.
[Emphasis added.] Thus, a unqualified denial of a request for admission, without objection or explanation, is acceptable only if the responding party has a good faith belief that the entire statement is untrue.
In the instant case, Onan Corporation's responses to plaintiffs' second set of requests for admissions clearly do not meet the requirements set forth. Defendant's response to the vast majority of questions regarding prior incidents in 1973, 1976, 1983 and 1985 was a plain denial, without an attendant objection, limitation or explanation. In view of defendant's present acknowledgement in its appellate brief that a corporate deponent had previously "admitted that Onan had notice of the prior incidents and of the facts concerning those incidents," the defendant's failure to confirm any such facts in the written responses, with necessary objections or qualifications, constitutes a clear violation of Article 1467. Similarly, having made such an acknowledgement prior to receipt of these requests for admissions, it cannot be found that Onan "had reasonable ground to believe that [it] might prevail on the matter," i.e., that the fact(s) would be proven untrue.
Despite the explicit requirements of Article 1467, Onan argues that its unqualified denials were justified based upon "the substantial dissimilarities" between the prior incidents and that of the instant case and because the wording of the requests was perceived to contain plaintiffs' legal conclusions regarding the facts at issue. However, neither of these arguments were raised by objections to any of the specific requests nor included as a qualification to the responses, as required by the article.[2] Furthermore, nothing in these articles suggest that a party's pretrial admission of fact necessitates the admissibility of that fact at trial, or that a particular legal conclusion deriving from that fact will prevail. Moreover, because Onan made no objection to the requests, it cannot be found that any were "held objectionable" so as to avoid an award of expenses under Article 1472. Therefore, these arguments may not now be asserted to foreclose an award of expenses under Article 1472 for Onan's failure to admit the facts of the prior incidents and litigation.
Finally, I must disagree with the majority's implicit conclusion that the occurrence *49 and circumstances of the prior incidents were "of no substantial importance" so as to deny plaintiffs an award under Article 1472. The court below determined that some portion of this evidence was relevant and admissible at trial, and this court affirmed that determination on appeal. Brodtmann v. Duke, 96-0257, pp. 11-13 (La.App. 4th Cir.2/11/98), 708 So.2d 447, 455-56, writs denied, 98-0645, 98-0658 (La.4/24/98), 717 So.2d 1177-78, cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). This defendant was then found liable under our products liability law because "Onan knew or should have known the [exhaust] nipple had a limited life," but "[d]espite this, no warnings of this fact and the dangerous risks posed by a failure were given." Id. at 16, 708 So.2d at 457 (quoting the trial court's reasons for judgment) (emphasis added). Given this explicit finding, I find it difficult to conclude that the prior incidents of nipple failure were "of no substantial importance" to the end result in this case.
For these reasons, I find that the plaintiffs are entitled under Article 1472 to recoup the expenses incurred in presenting evidence at trial of the admissible facts surrounding the prior incidents. However, the motion before the trial court sought sanctions for other alleged discovery violations not at issue in this appeal. Consequently, it cannot be determined from the appellate record which costs, expenses, and attorney fees related to proving, rather than discovering, the admissible facts denied by Onan in response to plaintiffs' requests for admission.
I, therefore, would vacate the judgment of April 28, 1998 to the extent that it completely rejects plaintiffs' claims under Civil Procedure article 1472, and remand for the trial court to determine what expenses, including attorneys fees, plaintiffs incurred in proving at trial the undisputed facts regarding the prior incidents.

ON REHEARING GRANTED
BAGNERIS, Judge.
This Court granted rehearing for the purpose of considering the application for rehearing filed by the plaintiffs/appellants in this matter. After considering the briefs, arguments and law, on rehearing, we affirm our original opinion with the following additional reasons:
A literal reading of La. C.C.P. arts. 1467 and 1472 indicates that the defendant/appellee was within its rights to deny the requests for admission as written, although it would have been more appropriate for the response to have stated that it was unable to respond. A request for admission is a discovery method for which a party is required to update a previous response under certain circumstances. See, La. C.C.P. arts. 1421 and 1428.
The award of reasonable expenses and attorney's fees pursuant to La. C.C.P. art. 1472 is mandatory except when the request for admission is "objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit." Obviously, the trial judge found that the dispute fell within one or more of the exceptions. On the record before us, given the vast discretion of the trial judge, we do not find that the decision of the trial court is manifestly erroneous or clearly wrong.
ORIGINAL OPINION AFFIRMED.
MURRAY, J., dissents with reasons expressed in the original dissenting opinion.
NOTES
[1] Although the numbering and language of the discovery' articles were revised in 1976, after the Voisin decision, the function of the admissions procedure was unchanged. Hoskins v. Caplis, 431 So.2d 846, 849 (La.App. 2d Cir.1983).
[2] Inadmissibility is not grounds for an objection to pretrial discovery. La.Code Civ. Proc. art. 1422, specified as applicable to requests for admissions in La.Code Civ. Proc. art. 1466.