888 So.2d 878 (2004)
Leamon McELVEEN, III
v.
The CITY OF NEW ORLEANS, The Alabama Great Southern Railroad Company, and Norfolk Southern Railway Company, Inc.
No. 2003-CA-1609.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 2004.
Writ Denied December 17, 2004.
*879 Steven J. Rando, New Orleans, LA, for Plaintiff/Appellee.
Charles M. Ponder, III, Lozes & Ponder, New Orleans, LA, for Sentry Select Insurance Company.
Albert A. Thibodeaux, Chief Deputy City Attorney, Edward E. Reynolds, Deputy City Attorney, Sherry S. Landry, City Attorney, Deborah M. Henson, Assistant City Attorney, New Orleans, LA, for Defendant/Appellee, The City of New Orleans.
Mark E. Van Horn, Cory R. Cahn, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellant, The Alabama Great Southern Railroad Company.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.
Defendant, The Alabama Great Southern Railroad Company, appeals the trial court's finding of liability and the trial court's judgment awarding Sentry Select Insurance Company costs and attorney's fees in the amount of $11,130.90 for the Alabama Great Southern Railroad Company's denial of requested admission and genuineness of documents. For the following reasons we affirm the trial court's findings.

FACTS AND PROCEDURAL HISTORY
Leamon McElveen ("McElveen") was employed by Transportation Warehousing Services ("Transportation Warehousing") as a tractor-trailer driver. Surety Select Insurance Company ("Sentry Insurance"), which was formerly known as John Deere Insurance Company, insured Transportation Warehousing in connection with its transportation business. On May 7, 1996, McElveen operated a tractor-trailer attached to a chassis upon which a cargo container, carrying a polermatics ("PMX") skid, was situated. Oxytech Systems, Inc. ("Oxytech") hired Transportation Warehousing to transport the PMX skid to Vacherie, Louisiana for refurbishing. As McElveen was transporting the PMX skid northbound underneath the St. Bernard Avenue railroad underpass, in the city of New Orleans, a foreign piece of metal allegedly struck the container carrying the PMX skid. As a result of the accident, plaintiff McElveen contends that he suffered physical injuries to his back, head, neck, left shoulder and lip, which resulted in a loss of teeth. McElveen further avers that as a result of the accident he has *880 experienced dizziness, traumatic headaches, and loss of memory.
McElveen filed suit against both the City of New Orleans and the Alabama Great Southern Railroad Company ("the AGS Railroad Company"), seeking damages for the personal injuries he allegedly sustained. Sentry, who maintained policies of insurance which provided coverage to Transportation Warehousing, intervened in the action seeking to recover the $40,500.00 it paid in settlement to Oxytech for damages to its PMX skid as a result of the accident and $6,411.00 it paid for damages to the cargo container and chassis. Sentry also sought recovery of the $49,617.30 it incurred investigating, evaluating, and adjusting Oxytech's claim. After a trial on the merits, the trial court awarded damages to McElveen for personal injuries he sustained as a result of the accident on May 7, 1996 and awarded Sentry Insurance damages, as well as attorney fees and costs. In its Reasons for Judgment, the trial court held, "the tracks and the structures supporting the tracks were in the care, custody and control of defendant, the AGS Railroad Company [sic]" and concluded that the AGS Railroad Company possessed responsibility for the hanging beam, thus determining that the City of New Orleans was not liable. The trial court's judgment provides, "based on the evidence in the record, the Court concluded that the AGS Railroad Company [sic] should have known of the condition of the bridge and more particularly, the presence of the hanging beam on the date of the subject accident." The trial court rendered judgment in favor of plaintiff, McElveen, against the AGS Railroad Company in the amount of $21,811.50. The trial court also rendered judgment in favor of intervenor, Surety Insurance, against defendant the AGS Railroad Company in the amount of $56,528.60 and further awarded attorney fees and costs in the sum of $11,130.90 against the AGS Railroad Company, as a consequence of its denial of Sentry Select Insurance Company's Request for Admissions of Fact and Genuineness of Documents under LSA-C.C.P. art. 1472. It is from this judgment that the defendant, the AGS Railroad Company, appeals.

LEGAL ANALYSIS
On appeal, the AGS Railroad Company, alleges four assignments of error:
1. The trial court erred in finding that the City of New Orleans was not responsible for the foreign piece of metal hanging from the St. Bernard Avenue railroad underpass;
2. The trial court erred as a matter of law in finding that the AGS Railroad Company should be imputed with constructive notice of the foreign piece of metal hanging from the St. Bernard Avenue railroad underpass;
3. The trial court erred in finding that the AGS Railroad Company had constructive notice of the foreign piece of metal hanging from the St. Bernard railroad underpass;
4. The trial court erred in awarding Sentry Insurance costs and attorney's fees pursuant to La. C.C.P. art. 1472 for the denial of Sentry Insurance's request for admissions of fact and genuiness of documents.

STANDARD OF REVIEW
The issues presented in this appeal consist primarily of questions of fact. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court announced a two-part test for the reversal of a fact finder's determinations:

*881 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of a trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State of Louisiana, Through the DOTD, 617 So.2d 880 (La.1993).
The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Id. The Louisiana Supreme Court has emphasized that
the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently'.
Housley v. Cerise, 579 So.2d 973 (La.1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
The rationale for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses, as compared with the appellate court's access only to a cold record, but also upon the proper allocation of trial and appellate functions between the respective courts. Thus, where two views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Watson v. State Farm Cas. Ins. Co., 469 So.2d 967 (La.1985).

FIRST ASSIGNMENT OF ERROR
The AGS Railroad Company avers that the trial court erred in finding that, pursuant to the terms and conditions set forth in the Union Passenger Terminal Agreement ("Terminal Agreement"), the City of New Orleans was not responsible for the foreign piece of metal hanging from beneath the St. Bernard Avenue railroad underpass. The trial court held:
The evidence in this case, in the form of testimony, documents and admissions, reveals that the tracks and the structures supporting the tracks were in the care, custody and control of defendant, the Alabama Great Southern Railroad ("AGS").
The trial court provided that this conclusion was reached based on the credibility determination of the witnesses who testified at trial. In its reasoning, the trial court held that, based on the testimony of plaintiff, McElveen; the New Orleans Police Department investigating police officer, Debra Preveau; and former employee of Transportation Warehousing, Vincent Ebbier, the AGS Railroad Company possessed responsibility for the hanging beam.
The Terminal Agreement provides:
"Where any grade separation referred to in Section 11, Paragraph A, subparagraphs (ii), (iii) and (iv), is effected by the City by an underpass, the respective Carriers which are the owners of the tracks involved, after the completion of such grade separation, shall maintain at their or its own expense the structures supporting the tracks. The City shall maintain or cause to be maintained all other portions of said grade separations."
The Terminal Agreement further stipulates that:
E. The ownership of all said grade separations shall vest in and remain with the City; provided, however, that the title to the track or track structures and the right-of-way-servitude for railroad purposes under or over said street *882 of highway shall remain with the particular Carrier owning or holding same and shall be unaffected by the ownership by the City of said separation; such grade separations and such rights and ownership shall be excluded from the lien ... of the Indenture.
Grade separations, as used in the Terminal Agreement, are defined as either an overpass or an underpass. The grade separation at issue in the case at bar is an underpass on St. Bernard Avenue.
The AGS Railroad Company avers that the terms and conditions set forth in the Terminal Agreement provides that the City of New Orleans owns and is responsible for inspecting and maintaining the railroad underpass; it further asserts that the AGS Railroad Company owns only the structures actually supporting the railroad tracks and are responsible under the Terminal Agreement for maintaining only those structures.
Robert Hilbun ("Hilbun"), the company's retired bridges and building foreman, testified that an inspection of the St. Bernard railroad underpass was conducted immediately following the accident, that all of the track structures were present and there did not appear to be any damage. Hilbun's testimony, based on his inspection, was that there was no damage to the railroad underpass, to the railroad crossties, or to the track structures and movement of trains over the railroad underpass was approved without any speed restrictions.
New Orleans Police Department Officer Debra Preveau ("Officer Preveau") testified that upon her arrival to the scene, she observed a rusty piece of metal projecting downward from the tracks, which tore into the front of the container and caused the container to buckle. She further testified that there was a "steel thing sticking through the railroad track." Her assessment at the scene of the accident was that, but for the rusty hanging beam the container could have easily passed safely under the trestle. Officer Preveau also testified that the beam did not appear to be part of the bottom structural part of the underpass, which hold the support together, but rather was jammed in the tracks of the St. Bernard Avenue underpass.
Vincent Ebbier, who was employed by Transportation Warehousing on the day of the incident, testified that upon his arrival to the accident scene, he observed a beam that was protruding down from the tracks. Because the Terminal Agreement specifically provides that title to the track and the track supporting structures shall remain with the particular carrier, we agree with the trial court's opinion that the AGS Railroad Company owned the track and alone possessed "garde" of the object which caused the personal injuries and property damages at issue.
An injured party seeking damages under a strict liability theory must only prove that thing which caused damage was in the care or custody of defendant, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by such defect. LSA-C.C. art. 2317. The liability imposed by La. Civil Code article 2317 is grounded in the custody or control of a defective thing. In Colleps v. State Farm General Insurance Co., 446 So.2d 988 (La.App. 3d Cir.1984), the court held that for the purposes of La. C.C. article 2317, custody means "supervision and control." In Loescher v. Parr, 324 So.2d 441 (La.1975), this court held that:
The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them and to draw some kind of benefit from them.
*883 The Terminal Agreement establishes that the respective carriers are the owners of the tracks and are responsible for the maintenance of the tracks and structures supporting the tracks. Further, the testimony provides that because the AGS Railroad Company had implemented procedures for inspection of the St. Bernard Avenue tracks and failed to follow such procedure, the St. Bernard Avenue tracks were the responsibility of the AGS Railroad Company. The testimony of Hilbun further establishes that the AGS Railroad Company had both supervision and control over the tracks. Based on his inspection as the AGS Railroad Company bridges and building's foreman, the AGS Railroad Company approved movement of trains over the railroad underpass without any speed restriction.
After careful review of the record, we find that the tracks and the tracks supporting structure were in the care, custody, and control of defendant, the AGS Railroad Company. We do not find that the trial court was manifestly erroneous in determining that the AGS Railroad Company was responsible for the beam that was jammed in the tracks.

SECOND and THIRD ASSIGNMENTS OF ERROR
In their second and third assignments of error, the AGS Railroad Company avers that the trial court erred as a matter of law in finding that the it should be imputed with constructive notice; and the trial court erred in finding that the AGS Railroad Company actually had constructive notice of the foreign piece of metal hanging from the St. Bernard railroad underpass.
La R.S. 9:2800.6(c)(1), provides that constructive notice means:
The claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee know, or in the exercise of reasonable care should have known, of the condition.
The AGS Railroad Company avers that, based on the evidence, the foreign piece of metal did not appear at the railroad underpass until immediately before McElveen's accident, which is insufficient for a finding of constructive notice. The AGS Railroad Company asserts that the trial court predicated its finding of constructive notice solely on its misperception that the railroad had not been inspected prior to May 7, 1996, and that the company did not have a plan in place for periodically inspecting the railroad bridge.
At the trial on the merits, the AGS Railroad Company introduced evidence that all of its track structures are inspected at least once a year and the railroad tracks traversing the railroad underpasses are inspected twice a week. Randy Allen ("Allen"), a bridges and building mechanic for the AGS Railroad Company, testified, "A bridge on our territory (referring to the AGS Railroad Company) is inspected every year." Further the AGS Railroad Company asserts that not only did Hilbun testify that the railroad tracks on the St. Bernard Avenue railroad underpass are inspected twice a week by the AGS Railroad Company's track department, but also that Section I of the Terminal Agreement sets forth that the actual bridge structure is owned by the City of New Orleans, for which the City is therefore responsible for inspecting and maintaining.
The evidence establishes that the rusty metal beam, which was embedded in the tracks on St. Bernard Avenue, would have *884 been discovered had the AGS Railroad Company followed its implemented procedure for bridge inspections. Prior to the May 7, 1996 accident, the AGS Railroad Company had in place a procedure in which each bridge was to be inspected by the AGS Railroad Company. More specifically, testimony establishes that this particular type of underpass, on the St. Bernard Avenue was to be inspected twice a week by the AGS Railroad Company's track department. However, Hilbun, AGS Railroad Company's bridges and building foreman, testified that contrary to the procedures for inspection, he had no personal knowledge of any inspections of this particular girder bridge prior to the May 7, 1996 incident. Although the record establishes that inspection reports were completed by the AGS Railroad Company, in November of 1996, the record is absent evidence establishing that the AGS Railroad Company inspected the St. Bernard Avenue tracks or track structures prior to May 7, 1996. We find, as the trial court did, that had the AGS Railroad Company followed its inspection procedures, the hanging beam would have been discovered. The testimony of McElveen established that two months prior to the May 7, 1996 accident, McElveen frequented the St. Bernard Avenue underpass without incident. McElveen further testified that during this period he did not observe any obstruction at this particular underpass. In Fox v. Housing Authority of New Orleans, 605 So.2d 643 (La.App. 4th Cir.1992), this court reasoned that the failure to conduct regular inspection and maintenance procedures was the basis for conferring constructive notice in negligence actions. We therefore find, as the trial court did, that had the AGS Railroad Company exercised reasonable care, the rusty metal beam would have been discovered.
Therefore, we do not find that the trial court erred as a matter of law in finding that the AGS Railroad Company should be imputed with constructive notice. Nor do we find that the trial court erred in finding that the AGS Railroad Company actually had constructive notice of the foreign piece of metal hanging from the St. Bernard Avenue underpass.

FOURTH ASSIGNMENT OF ERROR
The AGS Railroad Company avers, in their fourth assignment of error that the trial court erred in awarding Sentry Insurance costs and attorney's fees pursuant to La. C.C.P. art. 1472 for the denial of Sentry Insurance's request for admissions of fact and genuineness of documents.
A trial court has vast discretion in determining whether to award attorney's fees, given the broad exceptions provided in Article 1472. Brodtmann v. Duke, (La.App. 4 Cir. 3/21/2001) 803 So.2d 41. La. C.C.P. art 1472 provides:
If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other god reason for the failure to admit.
Attorney's fees awarded for a party's failure to admit genuineness of documents or truth of any matter is the reasonable expense incurring in proving the truth of the requested admission. Brodtmann, *885 803 So.2d 41 at 45. In determining whether the party failing to admit a fact had reasonable grounds to believe that it might prevail for purposes of determining whether to award attorney fees for that failure, the proper test is whether the party acted reasonably in believing that it might prevail. Id. at 46.
The defendant, the City of New Orleans, and McElveen admitted to the authenticity of Sentry's documents and payment, whereas the AGS Railroad Company substantially denied all of Sentry Insurance's Requests for Admissions of Fact and Genuineness of Documents. The trial court reasoned:
[T]hat the requested admissions were of substantial importance and that AGS' failure to admit in this regard was not based upon a reasonable belief that it might prevail on the matter or that there was other good reason for its' failure to admit.
In the case at bar, Sentry Insurance provides that all exhibits with the exception of Exhibit 22 were introduced without objection. However, these exhibits were included as part of Sentry's Requests for Admissions of Fact and Genuineness of Documents, which the AGS Railroad Company denied during discovery. The documents for which Sentry Insurance requested admission of fact and genuineness included those relative to investigation, damage evaluation, payment and subrogation of the subject cargo, cargo container and chassis claims, and the submission of the referenced exhibits into evidence without the necessity of proving the authenticity of these documents. Sentry Insurance avers that the requests for admission of facts and genuineness of documents were an attempt to streamline the trial of the merits to the issue of liability. We find, as the trial court did, that the attorney fees and costs requested are associated with Sentry Insurance. proving the documents generated were in connection with its' handling of these claims and the payments made for cargo, cargo container and chassis damage. We further find that the trial court did not abuse its discretion in reasoning that the requested admissions were of substantial importance and that the AGS Railroad Company's failure to admit in this regard was not based upon a reasonable belief that it might prevail on the matter or that there was other good reason for the AGS Railroad Company's failure to admit.

CONCLUSION
For the aforementioned reasons, we find affirm the judgment of the trial court.
AFFIRMED.