STEWART, J.
 

 |, The plaintiff, Shonna Caldwell Lang (“Shonna”), sued the defendants, Dawn Sproull (“Dawn”) d/b/a Ark-La-Tex Shop Builders (“ALT”) and Howard “Rowdy” Prince (“Rowdy”) d/b/a ALT, for damages due to breach of a contract to build a metal shop next to her home and unfair trade practices. Dawn reconvened for the balance due under the contract.
 

 Finding that Rowdy was not an owner of ALT, the trial court denied all claims against him. However, the trial court rendered judgment against Dawn as owner of ALT in the amount of $36,800 for damages due to breach of the contract to build and $3,004.50 for deposition costs and expert witness fees, plus additional court costs.
 
 *411
 
 Shonna’s remaining claims were denied. The trial court granted Dawn’s reconven-tional demand, awarding her $6,747.
 

 Shonna now appeals the award of $6,747, the finding that Rowdy was not an owner of ALT, and the denial of her other claims. Answering the appeal, Dawn asserts that the damages awarded to Shonna were excessive. For the reasons that follow, we find that the trial court erred in granting the reconventional demand, in finding that Rowdy was not a partner in ALT, and in awarding certain damages for breach of the contract to build.
 

 FACTS
 

 On September 13, 2005, Shonna contracted with ALT for the construction of a metal building measuring 30 feet by 50 feet to be used as a boat storage area, a workshop for her husband, and a play area for her children. The contract provided that ALT would furnish dirt for the pad totaling 10 loads. No other specifications regarding elevation or preparing |2the site for construction were included in the contract. The contract also provided for a slab inside the building and a porch. The contract price was $23,147, but this amount was reduced to $21,747 when the parties agreed to shorten the height of the walls from 12 feet to 10 feet.
 

 ALT constructed the building and completed the porch in about a week in October of 2005. Shortly after completion, Shonna met with Rowdy and Derek Gore, an ALT employee who had previously met with Shonna and had prepared ALT’s proposal for the job, to address issues concerning the poor appearance of the porch and problems with drainage. Thereafter, ALT poured additional concrete over the porch area and then applied a finish after the concrete hardened. To address problems with drainage, ALT dug a swell or ditch along the side of the building to direct the flow of rainwater around the building. ALT also sent someone to move dirt that had been piled against Shonna’s trees.
 

 Despite ALT’s efforts to address the drainage issues, problems persisted. Water entered the front of the building flooding the floor area. Water also settled in the swell creating a muddy mess. Though there is much dispute in the record regarding the communications between ALT and Shonna about the drainage problems and attempts by ALT to collect payment, Shonna ultimately tendered payment in the amount of $15,000 to ALT on November 21, 2005. Because the amount tendered was less than the contract price, ALT placed a lien on the property on November 23, 2005. Thereafter, Shonna sought the advice of other contractors who offered proposals for addressing the drainage problems and who revealed other problem areas with the construction.
 

 | ¡¡Asserting that the building was not constructed in a workmanlike manner and seeking damages for numerous alleged defects and unfair trade practices, Shonna filed suit for breach of contract on August 17, 2006, against Rowdy and Dawn as the owners of ALT. In their answers, both Rowdy and Dawn asserted that ALT was a sole proprietorship owned by Dawn and that Rowdy was merely an independent contractor. Dawn also reconvened against Shonna for the balance due on the contract.
 

 At the close of the bench trial, the trial court found that ALT was owned by Dawn and that Rowdy was merely an employee of the business. Upon finding that the workmanship by ALT was substandard and considering the expert testimony offered by Shonna, the trial court awarded her the following damages:
 

 • $13,000 to remedy elevation and drainage problems.
 

 
 *412
 
 • $5,000 to remove and repour concrete that ALT had poured directly against the vinyl skirting on the mobile home when constructing the porch.
 

 • $400 for new skirting on the mobile home.
 

 • $800 to repair gaps in a doorway area of the building.
 

 • $15,000 to remove and repour the concrete slab inside the building.
 

 • $8,100 to remove and replace metal siding that had corroded along part of the building where dirt was piled against it.
 

 The trial court also ordered Dawn as owner of ALT to pay expert fees, deposition costs, and court costs. All other claims by Shonna were denied. Though the trial court said it was rejecting the reconven-tional demand by Dawn for the contractual balance due, it entered an order by minute entry the next day to allow Dawn the credit for the balance due on the contract.
 

 | Judgment was rendered on April 16, 2009, against Dawn d/b/a ALT in the amount of $36,800 in damages, $3,004.50 in expert fees and deposition costs, plus additional court costs, and against Shonna in the amount of $6,747 on the reconventional demand. The judgment also provided for cancellation of the lien. All claims against Rowdy were denied and all other claims asserted by Shonna were denied.
 

 Following the denial of her motion for a new trial, Shonna appealed. Dawn answered the appeal to assert that the award of damages was excessive. We will now address the issues raised in the appeal and answer.
 

 DISCUSSION
 

 Because the issues on appeal are factual, our review is limited to a determination of whether the trial court’s findings of fact are manifestly erroneous or clearly wrong. We do not determine whether the factfinder was right or wrong but whether its conclusions were reasonable.
 
 Stobart v. State, Through DOTD,
 
 617 So.2d 880 (La.1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed on review where there is conflicting testimony.
 
 Id.
 
 Where documentary or objective evidence contradicts a witness’s story or the story itself is internally inconsistent or implausible such that no reasonable trier of fact would credit it, then we may find manifest error even in a finding purportedly based on a credibility determination.
 
 Id.
 
 But in general, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Id.
 

 \ friability of Howard “Rowdy” Prince
 

 Dawn argues that the trial court erred in failing to find that Rowdy was a partner in ALT. We agree.
 

 Our law defines a partnership as a “juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.” La. C.C. art. 2801. Where there is no written agreement, the existence of a partnership may be established by proof that the alleged partners agreed (1) to form a partnership and participate in the profits to accrue from the business in determined proportions; (2) to share in the losses as well as the profits of the partnership; and (3) to have the property or stock of the partnership form a community of goods in which each party has a proprietary interest.
 
 Porter v. Porter,
 
 36,007, p. 14 (La.App.2d Cir.6/12/02), 821 So.2d 663, 671,
 
 and cases cited therein; Harris v. Wallette,
 
 538 So.2d 728 (La.App. 2d Cir.1989).
 
 *413
 
 Essentially, the parties must intend to have a business relationship between them and that relationship must have all the major characteristics of a partnership.
 
 Porter, supra.
 

 Dawn and Rowdy asserted in their answers and testified that she is the owner of ALT and that he is employed as its general manager. However, the totality of the testimony shows this to be a fiction.
 

 Rowdy testified that he came up with the idea to begin building “pole barns,” or post-frame constructed buildings, in Louisiana after moving back to the state from Mississippi and needing to do something to earn a living. RHe approached Dawn, a casino waitress/hostess with no construction experience and with whom he had fallen in love, about his idea.
 

 Dawn testified that she was “somewhat” involved in planning the business. The only involvement by Dawn in the business as shown by the record is that she obtained a “Home Improvement Contractor” license under which ALT operated, she worked in the office a couple of days a week, and she filed the lien under the name Dawn Sproull d/b/a ALT. Primarily, Dawn is a housewife and Rowdy runs the business. She candidly admitted that ALT was started in her name, meaning that she obtained the license, because Rowdy was going through a divorce in Mississippi and did not want to “complicate” his divorce proceedings. Dawn’s testimony established that she knows nothing about the business and knew nothing about ALT’S contract with Shonna.
 

 Rowdy’s testimony established that ALT was his idea. He also candidly admitted that the home improvement license was obtained in Dawn’s name rather than his due to his divorce proceedings in Mississippi. He testified that he had all the tools and materials needed to operate the business, including a tractor and a truck. Dawn was going to do the paperwork while he did the physical work. He put out signs, and the business just took off. He hired Derek Gore to design a website for ALT and then to work as a salesman. Rowdy testified that he paid the hosting fee for the website with his credit card. The website makes no mention of Dawn. When asked whether he and Dawn were partners in ALT from its inception, he replied, “You could pretty much say that, that’s correct.” He |7further explained that on paper they were not partners, but in reality they were.
 

 Considering the testimony in light of the factors for finding that a partnership exists, it was clearly wrong for the trial court to find that Rowdy had no ownership interest in ALT. Rowdy initiated the formation of the business. He and Dawn reached an agreement whereby she would obtain the licensing from the state to operate ALT, and he would run the business. Thus, ALT was started by mutual consent of Rowdy and Dawn.
 

 There can be no conclusion but that Rowdy and Dawn, who live together and have a family, share in the profits and losses of ALT. Though Dawn testified that Rowdy was paid a salary and that he did not then have access to the business bank accounts, she could not say what his salary was. The testimony suggesting that Rowdy was merely a paid general manager or employee with no share in the profits or losses of ALT was largely self-serving and uncorroborated by any documentary evidence.
 

 Finally, each was shown to have a proprietary interest in ALT. Rowdy formulated the idea for ALT and contributed the tools, material, and know-how required to operate the business. Dawn apparently contributed some minimal amount of office work, as well as her name and status as a
 
 *414
 
 Louisiana resident to obtain the home improvement license under which ALT operated.
 

 The trial court’s finding that Rowdy was merely an employee is manifestly erroneous. The only basis for finding Dawn to be the sole owner is the fact that the home improvement license was in her name and that she filed the lien. These facts do not establish that she is ALT’s sole proprietor |sor that no partnership exists. At most, they evidence Dawn’s limited involvement in ALT. Dawn did not obtain the license because she was the sole owner of ALT. The record established that Dawn obtained the license because Rowdy wanted to avoid complicating his Mississippi divorce proceedings. Thus, the licensing does not prove sole ownership by Dawn but rather is evidence of a mutual agreement between her and Rowdy. Therefore, we find that Dawn and Rowdy are partners in ALT and that Rowdy is liable for his virile share of the partnership debts as provided in La. C.C. art. 2817.
 

 Damages and Credit for the Balance Due
 

 In an answer to the appeal, Dawn argues that the trial court erred in awarding excessive damages. She specifically challenges the awards of $18,000 to remedy the elevation and drainage problems and $15,000 remove and repour the slab inside the building. In her appeal, Shonna argues that the trial court erred in ordering her to pay the balance due under the contract.
 

 La. C.C. art. 2769 governs a contractor’s liability of non-compliance with a contract and states:
 

 If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
 

 A contractor must construct the work in a good and workmanlike manner so that it is suitable for its intended purpose and free of defects in workmanship and materials.
 
 Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc.,
 
 36,361 (La.App.2d Cir.12/20/02), 835 So.2d 880,
 
 writ denied,
 
 2003-0555 (La.5/2/03), 842 So.2d 1101. An owner who seeks to recover damages from a contractor has the burden of proving: (1) the existence and nature of the defects; (2) that the defects were due to faulty materials and workmanship; and (3) the cost of repairing the defects.
 
 Id.
 
 The cost of repairing the defects or completing the work is the appropriate measure of damages under La. C.C. art. 2769.
 
 Id.
 

 The trial court awarded $13,000 to remedy the elevation and drainage problems. Dawn complains that the award is excessive because these problems can be remedied at a much lower cost and are largely due to the site choice made by Shonna. Dawn also claims that Shonna did not give ALT adequate opportunity to correct the drainage problem.
 

 The record shows that the drainage problem was the primary complaint by Shonna and was related to the improper elevation of the site for the building. The building is situated on a slope behind the mobile home. There is dispute in the record as to whether Shonna chose the location or whether she was talked into that specific location. Nevertheless, the fact remains that ALT contracted to construct the building in that location and agreed to furnish the pad for the building by performing the dirt work necessary to prepare the site. ALT was obligated to perform this work in a good and workmanlike manner. Though the contract called for 10 loads of dirt, ALT brought in an additional six loads at its own cost. Still, Shonna
 
 *415
 
 noticed that the elevation of the building appeared rather low and that water ran into the front of the building when it rained. To remedy the problem, ALT dug a swell or ditch along the side of the building to allow 110rainwater to drain around and to the back of the building. However, water puddled in the swell. Shonna testified that when she complained about the swell, Rowdy said that elevation was not ALT’s problem. However, Rowdy testified that ALT was not given the opportunity to complete the swell and the “finish grade” on the property, which would have remedied the drainage problem. Considering the conflicting testimony, we cannot say that the trial court erred in crediting Shonna’s version over Rowdy’s version and in finding Shonna entitled to damages to correct the elevation and drainage problems.
 

 Shonna presented the testimony and estimates of two experts. James Burford, the owner of a dirt and site planning business with 17 years of experience in that area of work, attributed the drainage problems to the elevation of the building. He said this is a problem that should have been addressed prior to construction. His proposed remedy included removing a substantial amount of dirt from the front area of the braiding at a cost of $5,200, and replacing the dirt with 4,000 square feet of crushed rock to make the front of the building accessible at a cost of $2,330. The cost of the work related to elevation came to $7,530. However, Burford’s total estimate of $12,210 also included $1,780 to remove the concrete porch, $2,200 to redo the porch, and $500 to replace vinyl siding which had been splashed with concrete when the porch was poured.
 

 Another expert with 20 years in business dealing with dirt and elevations was David Strong. He believed that the building should have been elevated at least a foot higher and that this would have required]^ substantially more dirt than was used by ALT. Though some things could be done to make the drainage issue better, Strong believed that problems would persist due to the building being too low. His proposal to improve drainage included removing 300 yards of dirt around the building at a cost of $3,000, removing four trees at a cost of $1,200, building a retaining wall at a cost of $3,062.50, reinstalling 4,000 square feet of gravel at a cost of $3,375, and reseeding the area around the back and side of the building at a cost of $800. The cost to address drainage and elevation issues came to $11,437.50. Strong’s total estimate was $14,437.50, and included $3,000 to remove and replace the back porch.
 

 No expert testimony was presented by Dawn or Rowdy. Instead, Rowdy testified that the drainage issue could be remedied at a much lower cost by completing the swell and that this would require only a few hours of moving dirt around. We find no error in the trial court’s rejection of Rowdy’s proposed solution and acceptance of the opinions of Burford and Strong.
 

 It is clear that the elevation work by ALT was substandard and that Shonna is entitled to damages. However, in awarding Shonna $13,000 for the elevation problems, the trial court considered the total estimates given by Burford and Strong to reach a midpoint. As noted above, their total estimates also included amounts for removing and repouring the porch. The trial court granted a separate award of $5,000 for the porch. Therefore, we must recalculate the award. The total of Bur-ford’s estimate related to elevation work was $7,530, and the total of Strong’s estimate for the same |12was $11,437.50. Meeting midway between these two estimates, we will reduce the damages awarded for the elevation repairs to $9,500.
 

 
 *416
 
 Dawn also argues that the award of $15,000 for removing and replacing the slab inside the building is excessive. Rowdy testified that he ordered enough concrete to pour a slab of four inches in thickness as required by the contract. The testimony of Rowdy and Derek Gore was that the slab did not bear the weight of the building or provide structural integrity. Its purpose was strictly aesthetic. The building, which is made by post frame construction, is supported by poles set in concrete outside the slab.
 

 Shonna did not have specific complaints about the floor other than learning from one of the experts she consulted that it was not four inches thick as required by the contract. Shonna’s husband Matt Lang testified that the concrete floor in the budding began to show some cracking about six to eight months after construction, but they never brought the issue to ALT’S attention. None of the photographs offered into evidence showed cracks on the concrete slab.
 

 The trial court’s award was based on the testimony of Shonna’s construction expert, George “Geep” Moore. Moore’s opinion was that the fiber reinforced slab poured by ALT does not provide adequate reinforcement and would be more prone to cracking than a steel or tendon reinforced slab. Moreover, by drilling holes, he found that the slab averaged only three inches rather than the four inches called for in the contract. Also, he opined that most slabs would have a beam around the | isperimeter, but the slab in the shop did not. Moore testified that these problems could only be remedied by removing and replacing the slab at a cost of $15,000 to $20,000. He said that because the building is “pole-constructed,” the slab could be removed while the building remains standing.
 

 Having reviewed the testimony relating to the slab issue, we find that the trial court was clearly wrong to award $15,000 to remove and replace the slab. Though Moore believed that a fiber reinforced slab should not have been used, ALT installed the type of slab called for in the contract. Moore’s opinion as to what type of slab should have been installed does not show that ALT’s installation of a fiber reinforced slab as agreed to in the contract was poor workmanship or rendered the slab unsuitable for its intended purpose as a floor for the building. We do not find that the thickness of a slab which serves no structural function necessitates an award of damages to pay for its removal and replacement. However, evidence shows that the slab is not four inches thick as called for by the contract. As shown by tickets introduced into evidence in support of Rowdy’s testimony that ALT used enough concrete for a four-inch slab, the total cost of concrete delivered on October 6, 2005, was $2,241.64. Some of the concrete was also used for the porch and sidewalk. We will award Shonna $1500 off the price of the concrete delivered for the job as compensation for ALT’S failure to fully perform the work it contracted to do.
 

 Asserting there was no substantial performance by ALT, Shonna claims that the trial court erred in ordering her to pay $6,747 to satisfy the Imbalance due on the contract. However, Dawn asserts that there was substantial performance despite the finding of some defects. Dawn notes that Shonna held a Halloween party in the building for her children and used it both as a playroom and for storage. Shonna’s husband was also able to store a boat in the building.
 

 Even when defects exist, a contractor may still recover the contract price when there has been substantial performance of the contract.
 
 Cascio v. Henry
 
 
 *417
 

 Hays Carpet,
 
 42,653 (La.App.2d Cir.10/24/07), 968 So.2d 844;
 
 Mount Mariah, supra.
 
 Whether there has been substantial performance is a factual determination about whether the construction is fit for its intended purpose despite the deficiencies.
 
 Cascio, supra; Mount Mariah, supra.
 
 The extent of the defects or nonperformance, the degree to which the purpose of the contract has been impaired, the ease of correction, and the use or benefit to the owner of the work performed are all factors that may be considered in determining whether there was substantial performance by the contractor.
 
 Cascio, supra; Mount Mariah, supra.
 

 Though this is a factual determination, we cannot conclude that there has been substantial performance of the contract so as to justify ordering Shonna to pay the balance due. Although Shonna and her family were able to make some use of the building, the evidence shows that there are substantial defects that render the building unfit for its intended purposes. This is primarily due to the elevation problems and related drainage issues which result in water flowing into the front of the building. This limits the use of the building as a storage area and playroom. There was expert [ 1fitestimony that problems will persist due to the inadequate elevation even when the recommended steps are taken to improve the drainage problem. Also, the building is not secure from pests and the construction is unfit for a termite treatment warranty. The trial court awarded $36,800 in damages due to the poor workmanship. Even though our adjustments have lowered the damages to $19,800, the damages remain almost as much as the contract price. The defects touch upon almost every aspect of the construction project, and the repair of the defects will likely result in significant inconvenience to Shonna and her family. We cannot find substantial performance on these facts and are constrained to reverse the award ordering Shonna to pay the balance due on the contract price.
 

 Other Claims
 

 Lastly, Shonna argues that the trial court erred in denying her claims under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401
 
 et seq.,
 
 and the New Home Warranty Act (“NHWA”), La. R.S. 9:3141
 
 et seq.
 
 We find no error in the trial court’s denial of these claims.
 

 The Unfair Trade Practices Law prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. 51:1405(A). Any person who suffers an ascertainable loss of money or property as a result of the use by another of an unfair or deceptive method, act or practice declared unlawful under R.S. 51:1405 may bring an action to recover damages, attorney fees, and costs. La. R.S. 51:1409(A). What constitutes unfair or deceptive practices is not 11Bdefined and must be decided on a case by case basis.
 
 United Group of Nat. Paper Distributors, Inc. v. Vinson,
 
 27,739 (La.App.2d Cir.1/25/96), 666 So.2d 1338,
 
 writ denied,
 
 96-0714 (La.9/27/96), 679 So.2d 1358. Unfair conduct is something that offends established public policy, while deceptive practices typically involve fraud, deceit, or misrepresentation.
 
 Id.
 
 The mere breach of a contract is not actionable under the Unfair Trade Practices Law.
 
 Schenck v. Living Centers-East, Inc.,
 
 917 F.Supp. 432 (E.D.La.1996).
 

 This is a breach of contract case. Our review of the record finds no merit to any claim under the Unfair Trade Practices Law. Shonna asserts that the claim that Rowdy was not an owner of ALT and the fact that the Home Improvement License was in Dawn’s name show unfair and
 
 *418
 
 deceptive trade practices. Shonna claims that the Home Improvement License did not allow for construction and that the contract did not comply with certain requirements under La. R.S. 37:2175.1, which sets forth requirements for written contracts for home improvements over $7,500. None of these complaints support an unfair trade practices claim.
 

 Both Shonna and her husband Matt testified that they contacted with ALT based on the recommendation of an acquaintance. There was no testimony that they inquired about ALT’S ownership, licensing, or insurance, or that they relied on such information in contracting with ALT. Shonna’s complaints that the contact did not satisfy the requirements of R.S. 87:2175.1 is of no merit and does not support an unfair trade practices claim. Failure of a home improvement contract to comply with the statutory requirements does not invalidate the contract. La. R.S. 37:2175.1(0). For 117these reasons, we find no error in the trial court’s denial of Shon-na’s unfair trade practices claim.
 

 Shonna also claims entitlement to attorney’s fees under the NHWA. She refers to the NHWA’s definition of “Home” as including “any new structure designed and used only for residential use, together with all attached and unattached structures, constructed by the builder.” La. R.S. 9:3143(3). However, Shonna did not contract with ALT for construction of a home as defined by the NHWA. Jurisprudence interprets the NHWA as applying exclusively to claims between a builder and an owner involving construction defects in a new residence.
 
 Carter v. Duhe,
 
 2005-0390 (La.01/19/06), 921 So.2d 963;
 
 Robert Angel Builders, Inc. v. Gilbert,
 
 42,340 (La.App.2d Cir.8/15/07), 962 So.2d 1162. This matter does not involve the construction of a new residence and is not covered by the NHWA. The claim for attorney’s fees under the NHWA has no merit and was properly denied.
 

 CONCLUSION
 

 For the reasons explained, we reverse that part of the judgment finding Howard “Rowdy” Prince free from liability and now find him liable as a partner in ALT along with Dawn Sproull for damages due to breach of contract under La. C.C. art. 2769, along with other costs as ordered by the trial court. We amend the award of damages to Shonna Lang from $36,800 to $19,800. Lastly, we reverse and set aside that part of the judgment granting the reconventional demand by Dawn Sproull and ordering Shonna Lang to pay the balance due on the contract.
 

 | jsThus, it is hereby ordered, adjudged and decreed that Dawn Sproull d/b/a Ark-La-Tex Shop Builders and Howard “Rowdy” Prince d/b/a Ark-La-Tex Shop Builders are liable unto Shonna Caldwell Lang for damages totaling $19,800 with judicial interest until paid, along with deposition charges and expert witness fees totaling $3,004.50, plus court costs.
 

 Costs of this appeal are assessed against the parties with Shonna Caldwell Lang bearing half and Dawn Sproull along with Howard “Rowdy” Prince bearing the other half.
 

 REVERSED IN PART, AMENDED IN PART, AND AFFIRMED IN PART.