PEATROSS, J.
11 Plaintiff, James Settle,[1] appeals the judgment of the trial court granting Defendant’s, Brenda Michelle Paul’s, Motion for Involuntary Dismissal at the close of Mr. Settle’s evidence. Mr. Settle also appeals the denial of his motion for summary judgment and the award of expenses and attorney fees in favor of Ms. Paul. For the *856 reasons stated herein, we reverse m part, affirm in part and remand the matter for the completion of the trial on the merits.

FACTS

This case involves a dispute over the existence of a partnership agreement regarding, and ownership of, Landmai'k Construction Company of Coushatta, L.L.C. (“Landmark”). Mr. Settle and Ms. Paul were in a romantic relationship and lived together for two years in a house owned by Ms. Paul. During this time, the couple decided to create a construction business together. It is undisputed that Mr. Settle, who had experience in construction, suggested to Ms. Paul the idea of the two starting the business. Ms. Paul was reluctant at first, concerned about undertaking such a large project. Ms. Paul eventually agreed to the idea and the couple held themselves out as a business and performed several “smaller” construction jobs during 2002.
The record reflects that several of the couple’s first jobs were for David Harvey, owner of Python Construction Co. (“Python”), an industrial concrete contractor. Mr. Settle and Ms. Paul apparently had a close 12reIationship with Mr. Harvey and Mr. Harvey provided advice and assistance to the couple in the early days of their business venture. Mr. Harvey advised the couple to incorporate the business and complete the necessary “paperwork” to enable the company to secure larger contracts in Texas, as well as Louisiana.
With Mr. Harvey’s assistance, Ms. Paul formed the limited liability company, Landmark, in March 2003. Landmark continued to do work for Python after the L.L.C. was formed. It is undisputed that all of the organizational documents list Ms. Paul as the sole member of Landmark. All parties, including Mr. Harvey, agree that the primary reason that Mr. Settle was not included as a member of the L.L.C. was because he was under a child support obligation to his former wife and he and Ms. Paul wanted to protect Landmark from consideration in Mr. Settle’s child support proceedings. In addition, Ms. Paul suggests that Mr. Settle had poor credit and several outstanding judgments against him; therefore, it was in the best interest of the company to put it in only her name.
As a practical matter, Mr. Settle was characterized as a superintendent, foreman and/or project manager for Landmark and was responsible for all work done by Landmark. He was paid a nominal salary of $300 per week. Ms. Paul was also classified as an employee on Landmark’s payroll records and was paid a nominal salary. All funds paid to the couple were commingled and used to pay their joint living expenses. Ms. Paul was primarily involved in the recordkeeping aspect of the business and Mr. Settle’s mother worked in the Landmark office performing | .^administrative duties. By all accounts, Landmark’s business flourished and the company was highly profitable. The record reveals that the company enjoyed a profit each year it was in business and Mr. Settle and Ms. Paul both had unfettered access to the company funds.
In June 2008, however, the relationship between Mr. Settle and Ms. Paul deteriorated and the couple separated. James ceased “working” for Landmark and the company stopped all operations. Ms. Paul then refused to allow Mr. Settle access to Landmark records or funds and took the position that she was the owner of the company and that Mr. Settle was merely an employee. Following the couple’s breakup, however, Ms. Paul made two payments to Mr. Settle in the amounts of $25,000 and $250,000. Ms. Paul suggests that these payments were a goodwill type gesture for Mr. Settle, while he argues that she was attempting to settle with him *857 regarding the co-owned property of Landmark.[2]
Mr.' Settle filed suit on July 10, 2009, alleging that he and Ms. Paul were business partners, each owning one-half of Landmark. He sought recognition as a co-owner of Landmark and requested partition of Landmark’s assets. Ms. Paul answered the suit, denying the existence of any partnership and maintaining that she was the sole owner (member and manager) of the L.L.C. as reflected in all of the organizational filings with the state.
|4Mr. Settle filed a motion for summary judgment on May 6, 2010, which was denied on the morning of trial, June 3, 2010. Trial commenced and Mr. Settle offered the testimony of five witnesses, including Ms. Paul and himself. At the conclusion of Mr. Settle’s case, counsel for Ms. Paul moved for involuntary dismissal, which was granted by the trial judge. The trial judge concluded that it was. clear from the evidence that Ms. Paul was the sole owner of Landmark and that Mr. Settle had failed to establish a prima facie case of ownership or an existing partnership between him ánd Ms. Paul. Ms. Paul then moved for expenses and attorney fees based on Mr. Settle’s allegedly untruthful answers to several requests for admissions. Following briefing on that issue, the trial judge ordered Mr. Settle to pay $2,500 in expenses and $5,000 in attorney fees to Ms. Paul in accordance with La. C.C.P. art. 1472. This appeal by Mr. Settle ensued.

DISCUSSION

Involuntary Dismissal

La. C.C.P. art. 1672 governs involuntary dismissals and provides, in pertinent part:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In a non-jury trial, a motion for involuntary dismissal requires the judge to evaluate the evidence and render a decision based on a preponderance of the | sevidence, without any special inference in favor of the party opposing the motion. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Chandler v. Chandler, 45,-308 (La.App.2d Cir.5/19/10), 37 So.3d 569; Lowe v. Skyjacker Suspensions, 45,058 (La.App.2d Cir.3/3/10), 32 So.3d 340. Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Crowell, supra; Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. As stated, a plaintiff is entitled to no special inferences in his favor, but “uncontrovert-ed testimony should be taken as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection.” Bartley v. Fondren, 43,779 (La.App.2d Cir.12/3/08), 999 So.2d 146, citing Johnson v. Insurance Co. of N. Amen, 454 So.2d 1113 (La.1984); Fuller v. WaV-Mart *858 Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988).
On appeal, the reviewing court reviews involuntary dismissals under the manifest error standard. Chandler, supra; Lowe, supra. The trial court has great discretion in granting an involuntary dismissal. Id.
Our law defines a partnership as a “juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.” La. C.C. art. 2801. Where there is no written agreement, the existence of a partnership may be established by proof that the alleged partners agreed | ⅜(1) to form a partnership and participate in the profits to accrue from the business in determined proportions; (2) to share in the losses as well as the profits of the partnership; and (3) to have the property or stock of the partnership form a community of goods in which each party has a proprietary interest. Lang v. Sproull, 45,208 (La.App.2d Cir.4/28/10) 36 So.3d 407, citing Porter v. Porter, 36,007 (La.App.2d Cir.6/12/02), 821 So.2d 663; Harris v. Wallette, 538 So.2d 728 (La.App. 2d Cir.1989).
“Essentially, the parties must intend to have a business relationship between them and that relationship must have all the major characteristics of a partnership.” Lang, supra; Porter, supra. Whether the parties have used the word “partnership” is immaterial in determining whether their enterprise is a partnership. Harris, supra. Moreover, there are no hard and fast rules in making the determination of whether a partnership exists and each case must be considered on its own facts. I.d. The consent to form a partnership may be inferred from circumstantial evidence. Id. The operation of an enterprise as a partnership has been held proof of the intention to form a partnership despite the lack of a formal partnership agreement. Id., citing Pertuit v. LeBlanc, 240 So.2d 777 (La.App. 2d Cir.1970).
In the case sub judice, Mr. Settle argues that the trial court manifestly erred in granting the motion for involuntary dismissal and in finding that he failed to establish by a preponderance of the evidence that a partnership was formed between him and Ms. Paul. We agree.
On the motion for involuntary dismissal, recall that the plaintiffs testimony should generally be accepted as true. Bartley, supra. Mr. Settle |7testified, and Ms. Paul agreed, that he approached Ms. Paul about the two of them creating a construction business. Mr. Settle and Ms. Paul operated the business together, obtaining several small construction jobs before the L.L.C. was officially formed. There is no dispute that Landmark was organized in Ms. Paul’s name only in order to protect the company’s assets from Mr. Settle’s former wife and his child support obligations.
Regarding the sharing of profits and losses, Mr. Settle and Ms. Paul enjoyed equal and unfettered access to Landmark profits. All salaries and draws from the company were deposited into one bank account and the couple’s living expenses were paid therefrom. Mr. Settle testified that the company did not experience a loss at any time; but, if it had, he would have shared equally in the loss just as he did the profits.
Mr. Settle and Ms. Paul used Landmark funds not only to support their day-to-day lives, but they also made significant improvements to the home owned by Ms. Paul and in which they both lived. In addition, Landmark funds were used to purchase various pieces of construction *859 equipment, as well as recreational vehicles, including a boat and fourwheelers. Moreover, Mr. Settle’s testimony supports his proprietary interest in Landmark. Ms. Paul agreed that it was Mr. Settle’s expertise in the construction trade that provided the foundation for the business.
Finally, we find significant that Mr. Harvey (of Python) testified that both Mr. Settle and Ms. Paul discussed with him the creation and formation of Landmark. Mr. Harvey related that the couple began the construction venture as a partnership and that both Mr. Settle and Ms. Paul intended that | Rit be owned equally by them. According to Mr. Harvey, Ms. Paul told him that she was listed as Landmark’s sole member to avoid potential problems with Mr. Settle’s former wife and/or creditors. Furthermore, Mr. Settle’s mother testified that Ms. Paul assured her that the couple was in partnership and that Mr. Settle would realize his share of the company despite the fact that she was the sole member of the L.L.C.
In the recent case of Lang, supra, we addressed a similar situation in which Rowdy, an experienced construction worker, approached his significant other, Dawn, with whom he lived, about starting a construction business. All of the expertise for the venture and the work on the projects was Rowdy’s; however, the licensing was in Dawn’s name only because of divorce proceedings in which Rowdy was involved. The trial court held, inter alia, that Rowdy had no ownership interest in the business and this court disagreed. Finding manifest error in the trial court’s conclusion in Lang, this court recognized the partnership/ownership interest of Rowdy based on the totality of the circumstances present in that case.[3] Likewise, we find that Mr. Settle met his burden of proving the existence of a non-written partnership by a preponderance of the evidence sufficient to survive Ms. Paul’s motion for involuntary dismissal.
Regarding Mr. Settle’s appeal of the denial of his motion for summary judgment, our de novo review of the record reveals genuine issues of material fact that must be addressed after a full trial on the merits.

19Expenses and Attorney Fees

Ms. Paul moved in open court for expenses and attorney fees under La. C.C.P. art. 1472 based on Mr. Settle’s allegedly untruthful answers to three requests for admissions. Article 1472 provides as follows:
If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney’s fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.
In determining whether the party failing to admit a fact had reasonable grounds to believe that it might prevail for purposes of determining whether to award attorney fees for that failure, the proper test is whether the party acted reasonably in believing that it might prevail. McElveen v. City of New Orleans, 03-1609 (La.App. 4th *860 Cir.9/14/04), 888 So.2d 878, writ denied, 04-2527 (La.12/17/04) 888 So.2d 870.
The requests for admission at issue herein are Nos. 5, 6 and 18:

REQUEST FOR ADMISSION NO. 5:

You have no documents to support your contention that you have an ownership interest in Landmark Construction Company of Coushatta, L.L.C.

REQUEST FOR ADMISSION NO. 6:

You have no documents to support your contention that you have an ownership interest in Brenda Michelle Paul’s personal home, having a municipal address of Rt. 1 Box 72-E, Coushatta, LA 71019.
_b * * *

REQUEST FOR ADMISSION NO. 18:

Your credit was never used to purchase any equipment or other tangible assets on behalf of Landmark Construction Company of Coushatta, L.L.C.
Mr. Settle answered “Denied” to each of the above three requests for admission. Ms. Paul argues that Mr. Settle’s answers were untruthful and that he ultimately admitted the same in his deposition and trial testimony. Specifically, Ms. Paul states that Mr. Settle admitted in his testimony that he did not have documentary evidence of the existence of a partnership or documentary evidence of an ownership interest in her home. Ms. Paul further points to the testimony of Mr. Settle that all lines of credit were issued to Ms. Paul and his credit was not used to purchase any Landmark property or movables. She suggests that there was no reasonable basis on which to base his denials of the requests for admission; and, as such, the trial judge properly ruled that she was entitled to expenses and attorney fees under article 1472.
Mr. Settle makes a commendable attempt at providing reasons for the denials of the requests for admission and we recognize the validity of his belief that he might prevail. His later admissions, however, on the very matters covered by the requests, convince this court that there was no reasonable basis for his denials. The requests were of substantial importance and we find no abuse of discretion in the award.[4]
|„ DECREE
For the foregoing reasons, the involuntary dismissal of the claims of James Settle is reversed and the matter is remanded for completion of trial on the merits. The denial of Mr. Settle’s motion for summary judgment is affirmed and the award of expenses and attorney fees in favor of Brenda Michelle Paul is affirmed. Costs of appeal are assessed equally to Brenda Michelle Paul and James Settle.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR COMPLETION OF TRIAL.

. The style of the case and various places in the record of this matter show Plaintiff's last name spelled "Settles”; however, the last name is spelled "Settle” in the brief filed on Plaintiff's behalf. We adopt the latter spelling in this opinion.

. Ms. Paul and Mr. Settle each retained possession of various movables owned by Landmark and this litigation has been fraught with proceedings to protect, return and classify movable property that was purchased with Landmark funds.

. The issue in Lang, supra, was whether Rowdy should be held liable as a partner for breach of contract. While the primary issue in Lang was liability and not partition of partnership assets, the analysis of partnership/ownership status is instructive.

. A reading of the trial judge's ruling leaves this court curious at best as to the trial judge’s analysis of Ms. Paul’s entitlement to expenses and attorney fees under the article. The trial judge states that "plaintiff was asked to produce any written documents pertaining to [ownership of Landmark]” and that Mr. Settle "denied that were any such documents.” The ruling further states that "at trial, it turned out that there were numerous documents right on point” and that Ms. Paul was seeking the expenses of having to prove those matters. Actually, the requests for admission asked for confirmation that Mr. Settle DID NOT have documents relating to his ownership interest in Landmark and he denied the same, indicating that he may in fact have such documentation. In any event, we review the judgment herein and not the reasons for judgment and we find no abuse of discretion in awarding expenses and attorney fees under article 1472.