NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-578

KOBY D. BOYETT

VERSUS

ARGYLE JOSEPH MOORE D/B/A JOE MOORE MASONRY

**********

APPEAL FROM THE
PINEVILLE CITY COURT, NO. 80694
PARISH OF RAPIDES
HONORABLE J. PHILLIP TERRELL, JR., CITY COURT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

Catherine M. Landry
Preis, PLC
P. O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
COUNSEL FOR PLAINTIFF/APPELLANT:
    Koby D. Boyett

**Todd L. Farrar**
**Farrar & Farrar**
**P. O. Box 4028**
**Pineville, LA 71361-4028**
**(318) 448-4040**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Argyle Joseph Moore d/b/a Joe Moore Masonry**

**PETERS, J.**

The plaintiff, Koby D. Boyett, appeals a trial court judgment dismissing his claims for damages against the defendant, Argyle Joseph Moore d/b/a Joe Moore Masonry (Mr. Moore). For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

In 2003, Mr. Boyett, who is a lawyer, and Mr. Moore, who is a brick mason, entered into an oral agreement wherein Mr. Moore agreed to construct a concrete-masonry-block wall in the back yard of Mr. Boyett's Pineville, Louisiana home. Mr. Boyett agreed to either purchase the necessary supplies and materials or reimburse Mr. Moore for any purchases he might make and pay him for his time and labor at a set hourly rate. It is undisputed that Mr. Moore was not a licensed or insured general contractor at the time of the agreement and that Mr. Boyett had no experience as a general contractor on any type of construction jobs. However, the two men had maintained a personal relationship for a number of years before entering into the agreement, were members of the same church, and Mr. Moore had previously worked on a fireplace in Mr. Boyett's home.

The record does not establish the date of the oral contract, but Mr. Boyett paid Mr. Moore the last check associated with the progress of the wall on July 21, 2003, and Mr. Moore finished his work on the wall by the end of that month.

While the record is somewhat unclear concerning the physical layout of the wall, it does establish that Mr. Boyett's residence is constructed on the highest point of his property, and the back yard slopes down toward a creek. The wall constructed by Mr. Moore extends sixty-five feet toward the creek from the left-

rear corner[1] of the residence and then runs parallel to the rear of the residence to a point below the right-rear corner of the residence. It then begins a zig-zag course up the hill toward the residence's right-rear corner, but stops well short of reaching that corner, leaving most of that side open. The general exterior layout of the wall is punctuated by two cutouts around existing trees,[2] and the wall varies in height around the back yard. The method of construction was to stack twelve-inch hollow-concrete-masonry blocks on a rebar-reinforced concrete footing and to secure them together and to the footing with mortar, but with every fourth stack of blocks being reinforced from top to bottom with rebar and filled with concrete. Thus, the rebar/concrete filled blocks functioned as would a standard fencepost, giving the wall its only lateral bracing or stability. Mr. Moore cleaned the excess mortar from both sides of the wall, thereby giving both sides a finished look, but placed no capstones on the top of the wall.

Thereafter, the wall remained in place without incident until June 14, 2008, when a portion of the wall collapsed during operations by a dirt contractor hired by Mr. Boyett to deliver and spread fill dirt inside the walled area to build up the yard.[3] Mr. Boyett made demand on Mr. Moore for the construction cost of the wall and remediation damages, and when Mr. Moore did not satisfy his demands, Mr. Boyett filed this suit for damages against him on September 29, 2008. This matter proceeded to a trial on the merits on July 6, 2012, and on October 26, 2012,[4] the

---

[1] This corner is established by looking toward the house from the creek.

[2] One cutout is located on the left wall and the other is located on the wall running parallel to the residence.

[3] At trial, Mr. Boyett testified that he could not remember the name of the dirt contractor or whether he was a licensed contractor authorized to perform the services performed for him.

[4] In the interim, the trial court had performed an on-site inspection.

trial court rendered written reasons for judgment in favor of Mr. Moore, which

stated in pertinent part:

> The Court considered the testimony of all the parties as well as the inspected site. Although this is a very difficult decision, the Court feels constrained to follow the decision of the experts' opinion [sic] and finds that the plaintiff was unable to meet his burden of proof, therefore this case is dismissed at plaintiff's costs.

On November 9, 2012, and citing La.Code Civ.P. art. 1917 as authority for

his action, Mr. Boyett filed a motion with the trial court seeking the following

relief:

> Specifically, KOBY D. BOYETT respectfully requests that the following reasons and/or factual determinations be set forth in a clear, concise, definite, and certain manner in order to provide a clear understanding of the trail [sic] court's decision: all judgments regarding the credibility of the witnesses; all essential and determining facts upon which this Court rests its conclusions of law; the issue of the veracity of the underlying contract; the issue of the intended purpose of the subject structure; and to further provide a reviewing court with the benefit of the trial court's factual determinations of weight, credibility, and/or inferences and to further avoid speculation on what law was applied.

On that same date, Mr. Boyett filed a motion for new trial even though a judgment

had yet to be signed by the trial court.

On November 26, 2012, the trial court executed a judgment dismissing Mr.

Boyett's claims against Mr. Moore, and on July 19, 2013, provided supplemental

written reasons for judgment wherein it stated, in pertinent part:

> After careful consideration of the arguments of counsel, reviewing the Plaintiff's Motion for Findings of Fact and Reasons for Judgment along with the witnesses' testimony, the Court finds the defendant's work was not defective and therefore stands by its original ruling in the Written Reasons handed down on October 26, 2012. The Court specifically adopts the opinion of the defendant's expert and finds that the structure in question was a "free-standing wall" and not meant to be a "retaining wall."

The trial court executed a judgment on August 30, 2013, rejecting Mr. Boyett's motion for a new trial.[5] Thereafter, Mr. Boyett timely perfected this appeal wherein he has asserted two assignments of error:

1. The trial court erred in failing to find that ARGYLE JOSPEH [sic] MOORE, d/b/a JOE MOORE MASONRY agreed to construct a retaining wall on the property of KOBY D. BOYETT. And,

2. The trial court erred in failing to find that ARGYLE JOSPEH [sic] MOORE, d/b/a JOE MOORE MASONRY breached his obligations under his agreement to KOBY D. BOYETT by constructing a retaining wall which failed and collapsed on account of the badness of the workmanship.

## OPINION

In *Porbeck v. Industrial Chemicals (US) Ltd.*, 13-1241, p. 4 (La.App. 3 Cir. 3/15/14), 134 So.3d 234, 236, this court recently discussed the law pertaining to breach of contract:

> "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. It is formed by the consent of the parties, via offer and acceptance. La.Civ.Code art. 1927.
>
> > Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.[] Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
>
> *Id.*
>
> A contract is interpreted by determining the common intent of the parties. La.Civ.Code art. 2045. It further has the force of law between the parties for claims arising from the contract. La.Civ.Code art. 1983. A trial court's factual findings with regard to the intent of the parties is reviewed on appeal pursuant to the manifest error—clearly wrong standard of review. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989).

---

[5] The judgment references an April 5, 2013 hearing on the new trial issue.

4

Louisiana Civil Code Article 2769 provides that "[i]f an undertaker fails to do the work he contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract." Additionally, La.Civ.Code art. 2771 provides, "Masons, carpenters, blacksmiths and all other artificers, who undertake work by the job, are bound by the provisions contained in the present section, for they may be considered as undertakers each in his particular line of business."[6]

> It is implicit in every construction contract that the work of the builder be performed in a good, workmanlike manner, free from defects in materials or workmanship. *Cascio v. Carpet*, 42,653, p. 10 (La.App. 2 Cir. 10/24/07), 968 So.2d 844, 851; *Trahan v. Broussard*, 399 So.2d 782, 784 (La.App. 3 Cir. 5/27/81). An owner who seeks to recover damages from a contractor has the burden of proving: 1) the existence and nature of the defects; 2) that the defects were due to faulty materials and workmanship; and 3) the cost of repairing the defects. *Lang v. Sproull*, 45,208, p. 9 (La.App. 2 Cir. 4/28/10), 36 So.3d 407, 414; *Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc.*, 36,361, p. 9 (La.App. 2 Cir. 12/20/02), 835 So.2d 880, 887, *writ denied*, 03-0555 (La.5/2/03), 842 So.2d 1101.

*Melancon v. Tri-Dyne-Pier, LLC*, 11-1055, pp. 9-10 (La.App. 5 Cir. 5/31/12), 95 So.3d 576, 581.

When an appellate court applies the manifest error—clearly wrong standard, it is subject to certain rules of review:

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety,

---

[6] The section referred to is "Section 3. Of Constructing Buildings According to Plots, and Other Works by the Job, and of Furnishing Materials[,]" which is located in "Chapter 5. Of Letting Out of Labor or Industry" of Title IX of the Louisiana Civil Code.

the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous--clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues *de novo*.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (footnote omitted) (citations omitted).

Additionally,"[w]here the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990).

In the matter before us, Mr. Boyett and Mr. Moore have conflicting versions of the particulars of their very loosely crafted oral agreement. On the one hand, Mr. Boyett asserts that he contracted with Mr. Moore for Mr. Moore to design and build a retaining wall sufficient to withstand the pressure caused by backfilling of his yard with fill dirt; and but for his lack of finances, both projects (building the wall and backfilling the yard) would have been completed in 2003. On the other hand, Mr. Moore asserts that Mr. Boyett hired him to build a wall to Mr. Boyett's specifications; and that Mr. Boyett made all decisions concerning the location of the wall and the manner in which the wall was to be constructed. Mr. Moore specifically denied any discussion concerning the future backfilling activities.

Mr. Boyett acknowledged that he ignored the fact that Mr. Moore was neither licensed nor bonded for the type of work contemplated, but claims to have relied on his understanding that Mr. Moore had experience in building retaining walls. His total input in the project, according to him, was to show Mr. Moore where to build the wall, dictate its height at any given point, and identify the several trees in the backyard he wished to preserve. Mr. Moore, according to Mr.

6

Boyett, assumed the responsibility of designing the retaining wall, acquiring the building materials, and dealing with all of the vendors.

Although acknowledging having built approximately ten retaining walls during his career, Mr. Moore asserted that he had never designed one and had no specialized training in engineering or construction  According to Mr. Moore, nothing was mentioned concerning backfilling the yard in the future and he was of the impression that Mr. Boyett wanted to enclose an area behind his detached garage apartment and pour concrete for a later expansion of the garage; and that he wanted to build a split-level deck extending from the rear of the house and down over the wall.

According to Mr. Moore, Mr. Boyett determined everything including the wall's height, the width of the footers, the type of blocks used, and the size and location of the rebar.  This oversight authority by Mr. Boyett continued in the construction phase, and Mr. Boyett constantly checked on the progress of the project.  Mr. Moore testified that had he known Mr. Boyett intended to use the wall as a retaining wall in the future, he would have used pilaster blocks, extended the footings, and advised Mr. Boyett that the wall required bracing.

Mr. Moore testified that Mr. Boyett instructed him to clean the excess mortar from both sides of the wall and he agreed with this instruction because that would have been a normal procedure for a freestanding wall.  Mr. Boyett, on the other hand, testified that he wanted both sides cleaned because he knew it would be sometime before he would be able to afford to backfill the yard, and he did not want to look at the excess mortar during that time.

Both litigants retained experts, and given the diametrically opposed testimony concerning the intended nature of the wall, the trial court leaned heavily

on the opinions of these experts in reaching its conclusion. Mr. Boyett retained the services of David R. Pfeiffer, a civil engineer,[7] and Mr. Moore retained the services of Charles White, an Alexandria, Louisiana licensed architect and general and residential contractor. As might be expected, their factual findings derived from an inspection of the premises were not in conflict.

Both Mr. Pfeiffer and Mr. White inspected the premises and agreed that the wall collapsed because it was not designed to withstand the June 2008 backfill activities. Mr. Pfeiffer explained that the wall failed because the horizontal equivalent pressure exerted against it by the fill dirt placed against its side caused it to rotate and fall. Both experts agreed that given the wall structure, this result was inevitable as soon as the dirt contractor began depositing the fill dirt against the wall. In the words of Mr. White, the wall was "doomed" at that point, and failure was just a matter of time.

According to Mr. Pfeiffer, the foundation was insufficient for the height of the wall and the construction should have incorporated a concrete heel extending back toward the residence. This heel, according to Mr. Pfeiffer, would have exerted a stabilizing weight and negated both the hydrostatic and horizontal pressures exerted against the wall by water and fill dirt. Mr. White went even further to suggest that if the wall was intended as a retaining wall, it should have been constructed with concrete fill and rebar throughout the structure, instead of every fourth column, and it should have been braced.

Neither expert was privy to the original conversations between Mr. Boyett and Mr. Moore, so neither could comment on the intent of the parties. However, both experts testified that the wall appeared to be nothing more than a free-

---

[7] The record is silent as to where Mr. Pfeiffer practices his profession.

standing wall. According to Mr. White, this conclusion on his part was based on the fact that both sides of the wall were cleaned of mortar and the fact that all of the blocks were not filled with concrete and reinforced by rebar. The fact that only mortar was holding the blocks together became a more serious issue for every foot in height of the wall. However, with regard to the quality of the concrete masonry itself, Mr. White found it to be excellent.

In a unique approach to explaining the purpose of Mr. Boyett's wall, Mr. Pfeiffer testified that it was simply a free-standing block wall until Mr. Boyett began back-filling his yard with fill dirt, and at that point it became an inadequately-designed retaining wall. According to Mr. Pfeiffer, any wall becomes a retaining wall once it is filled with dirt.

Both men agreed that the unknown dirt contractor should have inspected the wall to determine whether he could safely deposit the fill dirt next to it. Mr. White suggested that "any reputable contractor of any experience what so ever would have known never to place dirt on and [sic] unfilled cement wall." Mr. White explained that even after determining that a wall is sufficient to be classified as a retaining wall, the backfilling process requires that the fill dirt be slowly added and compacted in six-inch lifts, working towards the wall, and testing for appropriate compaction by a soil laboratory; and as the compacted soil approaches the wall, flume sand[8] should be used to help cushion the wall from the compacted field.

Finally, Mr. White criticized Mr. Boyett's attempts to serve as his own general contractor in both constructing the wall and filling it with dirt.[9] He suggested that no "reasonable person" would hire Mr. Moore to construct a

---

[8] Mr. White described flume sand as the most fluid type of soil to be used in a backfilling operation.

[9] He identifies Mr. Boyett as the general contractor based on the fact that he paid Mr. Moore a set price for his labor and paid for all the materials.

9

retaining wall given his lack of license, and he said that that fact should have been a red flag to Mr. Boyett. Had Mr. Boyett obtained a permit for the project as he was required to do, this action would have necessitated the production of drawings and structural calculations based on his intent for the wall. Mr. White presumed that the dirt work performed in 2008, would also require a permit. He described this portion of the project as being dangerous because it is a very fluid situation. Thus, he acknowledged the necessity for engineering input in filling the wall with dirt. Additionally, Mr. White testified that he absolutely would not have separated the building project from the dirt project.

In its supplemental reasons for judgment, the trial court found that the wall at issue was a free-standing wall and not a retaining wall; and it found that Mr. Moore's work in building the wall was not defective. In reaching this factual conclusion, the trial court relied primarily on Mr. White's testimony.

At the outset, we note that this is a very fact-intensive case with diametrically opposed versions of the intent of the contract. The trial court was presented with two conflicting views of the evidence, and we cannot say that its factual conclusions were manifestly erroneous. We find no merit in Mr. Boyett's assignments of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment dismissing the claims for damages by Koby D. Boyett against Argyle Joseph Moore d/b/a Joe Moore Masonry. We assess all costs of this appeal to Koby D. Boyett.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.